CLIFFORD C. CLONTZ v. J. V. CLONTZ AND MARY RUTH CLONTZ

No. 7920DC78

(Filed 15 January 1980)

**Quasi Contracts and Restitution § 1.2— plaintiff's improvements to defendants' land —recovery under unjust enrichment**

The fact that plaintiff made improvements on defendants' property upon the good faith belief that a life estate in such property was promised him, and that such improvements inured to defendants' benefit, was sufficient to support recovery under the unjust enrichment doctrine.

APPEAL by defendants from *Honeycutt, Judge.* Judgment entered 14 September 1978 in District Court, UNION County. Heard in the Court of Appeals 26 September 1979.

This action was instituted by plaintiff on 27 May 1977 to recover $2,404 allegedly expended for improvements placed by plaintiff upon defendants' land. Plaintiff alleged an oral agreement between the parties wherein defendants, J. Vann Clontz and Mary Ruth Clontz, promised that if plaintiff would build a well and various other improvements on the property and locate his house trailer thereon, they would execute a deed and convey to plaintiff a life estate in the land he occupied. Plaintiff alleged further that after he had performed, defendants refused to execute the deed, and that thereafter defendants filed an action in ejectment against plaintiff. Plaintiff subsequently vacated the property, and the ejectment action was dismissed.

Defendants, in their answer, denied the existence of any agreement entitling plaintiff to a life estate in the property. Defendants also averred that plaintiff resided on their property as a tenant at sufferance and counterclaimed to recover $3,000 allegedly owed by plaintiff as the fair market rental value for the period of occupancy. Plaintiff replied, reaffirming his original claim for a life estate, and argued that no rental agreement existed for the period of his occupancy.

At trial, plaintiff testified that during February and March of 1974, he was hospitalized and thereafter defendants asked plaintiff to move onto their property so they could care for him; that he spent considerable sums of money improving a portion of defendants' property and digging a well to provide water for the

trailer located there; and that defendants did not share in the labor or expenses involved in such improvements. Further testimony revealed that at the time plaintiff moved onto defendants' property, J. Vann Clontz said that he was "moving his brother out there so they could help take care of him and intended to let him stay there as long as he lived if he acted like somebody", and that he "was giving Clifford a place to stay if Clifford would dig the well and septic tank out there."

Defendant J. Vann Clontz testified that during conversations with plaintiff concerning plaintiff's moving onto the property, he told plaintiff that "I wouldn't give him no lease, but I told him as long as he tried to get along with me and my family, he could live there as long as he wanted to if that was all his life." J. Vann Clontz denied ever having an intention to convey his brother any interest in the property. J. Vann Clontz stated that he had asked plaintiff to vacate the property because plaintiff and his family were "raising the devil, cussing all the time over there", and because plaintiff had allegedly cursed his wife and son during an incident concerning plaintiff's dog. Defendant Mary Clontz testified that she had never made any agreements with plaintiff about moving onto the property, and that she finally had to ask plaintiff to leave the property because of plaintiff's improper behavior. Defendants admitted that after plaintiff moved from the property, they used the well which had been dug at plaintiff's expense, and that their son had moved onto the property and was using the well and septic tank installed by plaintiff.

The jury returned a verdict in favor of plaintiff, awarding $1,000 in damages. Defendants' motion for judgment notwithstanding the verdict was denied, and defendants appealed.

*Griffin, Caldwell & Helder, by H. Ligon Bundy, for plaintiff appellee.*

*Harry B. Crow, Jr., for defendant appellants.*

MORRIS, Chief Judge.

The only question presented on this appeal is whether the trial court erred in denying defendants' motion for judgment notwithstanding the jury's verdict awarding compensation for improvements made by plaintiff on defendants' property.

Clontz v. Clontz

By G.S. 1-340, the betterments statute, North Carolina provides for recovery of the value of improvements made upon another's property. However, this section does not create an independent cause of action. Rather, it embodies only a defensive right, declaring that an owner of land who seeks and obtains the aid of the court to enforce his right to possession has no just claim to anything but the land itself and a fair compensation for being kept out of possession. Further, if the land has been improved by another under the belief that he was the owner, the true owner ought not to take the increased value without some compensation to the ousted occupant. *Beacon Homes, Inc. v. Holt,* 266 N.C. 467, 146 S.E. 2d 434 (1966); *Board of Commissioners v. Bumpass,* 237 N.C. 143, 74 S.E. 2d 436 (1953). It is clear that plaintiff has no right to recover under this statute.

Defendants erroneously contend that plaintiff bases his right to recovery upon the theory of improvements under the betterments statute. Plaintiff bases his action to recover the value of improvements on the common law theory of unjust enrichment. "The rule of unjust enrichment is based upon the equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another." *Stauffer v. Owens,* 25 N.C. App. 650, 652, 214 S.E. 2d 240, 241 (1975). Thus, where services are rendered and expenditures are made by one party to or for the benefit of another without an express contract to pay, the law will imply a promise to pay a fair compensation therefor. *See R.R. v. Highway Commission,* 268 N.C. 92, 150 S.E. 2d 70 (1966); *Beacon Homes, Inc. v. Holt, supra.*

The theory of unjust enrichment has been specifically applied in situations such as this involving the making of improvements based on an alleged parol contract to convey real property. Aside from the right to setoff used as a quasi-contract remedy at common law and under G.S. 1-340, the law has recognized the theory of unjust enrichment as the basis for an independent action to recovery for improvements. In *Rhyne v. Sheppard,* 224 N.C. 734, 32 S.E. 2d 316 (1944), the Court stated that while no independent action to recover for improvements could be maintained at common law, the plaintiff may pursue his remedy in equity:

"Plaintiff is not confined to a common law action for improvements, if indeed such right may be enforced by inde-

pendent action. G.S. 1-340. He may resort to the equitable doctrine of unjust enrichment frequently enforced under the doctrine of estoppel." 224 N.C. at 736-37, 32 S.E. 2d at 317-18.

Early decisions recognized that under equity principles, a party entering into possession of real property under a parol contract to convey and who in good faith makes improvements in reliance on the promise to convey is entitled to compensation therefor. In *Pitt v. Moore,* 99 N.C. 85, 5 S.E. 389 (1888), the Supreme Court enunciated the following rule:

"[W]here the labor or money of a person has been expended in the permanent improvement and enrichment of the property of another by a parol contract or agreement which cannot be enforced because, and only because, it is not in writing, the party repudiating the contract, as he may do, will not be allowed to take and hold the property thus improved and enriched, 'without compensation for the additional value which these improvements have conferred upon the property,' and it rests upon the broad principle that it is against conscience that one man shall be enriched to the injury and cost of another, induced by his own act." 99 N.C. at 91, 5 S.E. at 392.

Similarly, in *Jones v. Sandlin,* 160 N.C. 150, 75 S.E. 1075, (1912), the Court stated as follows:

"The general rule is that if one is induced to improve land under a promise to convey the same to him, which promise is void or voidable, and after the improvements are made he refuses to convey, the party thus disappointed shall have the benefit of the improvements to the extent that they increased the value of the land. (Citations omitted.)" 160 N.C. at 154, 75 S.E. at 1077.

Application of this principle has been broad and quite liberal in an attempt to do justice upon the facts of the particular case in which applied. *See, e.g., Insurance Co. v. Cordon,* 208 N.C. 723, 182 S.E. 496 (1935); *Jones v. Sandlin, supra; Eaton v. Doub,* 190 N.C. 14, 128 S.E. 494 (1925). This independent action was recognized and approved in the more recent decision of *Beacon Homes, Inc. v. Holt, supra.*

We now consider the propriety of the trial court's denial of defendants' motion for judgment notwithstanding the verdict. In *Brokers, Inc. v. Board of Education*, 33 N.C. App. 24, 234 S.E. 2d 56, *cert. denied*, 293 N.C. 159, 236 S.E. 2d 702 (1977), this Court stated the standard appropriate for review of an order denying a motion for judgment *non obstante veredicto:*

"When passing on a motion for judgment notwithstanding the verdict, the same standards applicable to a motion for directed verdict are to be applied. Thus, the court must consider the evidence in the light most favorable to the plaintiff and may grant the motion only if, as a matter of law, the evidence is insufficient to support a verdict for plaintiff. *Hargett v. Air Service* and *Lewis v. Air Service*, 23 N.C. App. 636, 209 S.E. 2d 518 (1974)." 33 N.C. App. at 28, 234 S.E. 2d at 59.

Applying this rule, it is reasonable to infer from the evidence presented in this case that defendants did promise to convey a life estate in the property. It is apparent from the record that defendants told plaintiff he could stay on the property as long as he lived. Defendants contend, however, that plaintiff's rights in the property were conditioned upon the requirement that he conduct himself properly, thereby limiting plaintiff to a tenancy at will. Although such a construction is possible, it is not the only reasonable interpretation possible. Having heard the testimony and observed the demeanor of each of the witnesses, the jury found that defendants orally promised to convey a life estate to the plaintiff and that plaintiff made permanent improvements upon the land pursuant to the oral promise. The evidence presented certainly supports such findings. We conclude that the evidence in this case was sufficient to withstand defendants' motion for directed verdict and so hold.

Plaintiff's recovery in this action is based on the jury's finding that an oral contract to convey real property existed between the parties. It is important, we think, to note that plaintiff's recovery does not necessarily depend on such an agreement. In *Stauffer v. Owens, supra*, this Court affirmed an award for improvements made by plaintiff inuring to the benefit of defendant, irrespective of contractual agreement. The Court stated:

"Even though the court found that no partnership existed between the parties, in our opinion it properly allowed plaintiff to recover for those goods and services which benefited defendant . . . . The mere ineffectiveness of a partnership agreement between the parties would not prevent plaintiff's recovery." 25 N.C. App. at 652, 214 S.E. 2d at 241.

Such a recovery is founded on the equitable theory of estoppel and not on principles of quasi or implied contract. In this case, the fact that plaintiff made improvements on defendants' property upon the good faith belief that a life estate in such property was promised him, and that such improvements inured to defendants' benefit, is sufficient to support recovery under the unjust enrichment doctrine.

No error.

Judges PARKER and MARTIN (Robert M.) concur.